## LEPPER v. UNITED STATES.

### (Circuit Court of Appeals, Fourth Circuit. May 2, 1916.)

### No. 1409.

CRIMINAL LAW ☞1170½(1)—TRIAL—CONDUCT OF JUDGE.

When first charged with the offense of counterfeiting, accused pleaded guilty; but the trial court rejected his plea and liberated him on his own recognizance upon a promise of reformation. Thereafter accused having re-engaged in such practices he was brought to trial. On trial the court asked accused whether he had, not prior to his having been brought into the jurisdiction for trial, written or procured others to write to the court letters admitting accused's guilt, but requesting a suspension of sentence. Accused admitted such letters, but stated he had done so to avoid trouble as to the charge. *Held* that, as there was no contention that the production of the letters would have shown the matter in any better light for accused, the conduct of the trial judge, which was not objected to, cannot be deemed prejudicial error, other evidence abundantly establishing accused's guilt.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3129; Dec. Dig. ☞1170½(1).]

Pritchard, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Hiram Lepper, otherwise called Charles Strailia, otherwise called George Briggie, was convicted of counterfeiting, and he brings error. Affirmed.

Harry B. Wolf, of Baltimore, Md., for plaintiff in error.
Samuel K. Dennis, U. S. Atty., of Baltimore, Md.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. Plaintiff in error, hereinafter called defendant, was convicted of counterfeiting and sentenced to imprisonment for 15 years. From the meager report of the trial, and from subsequent correspondence of defendant with the District Judge and the clerk of his court, which correspondence has been certified to this court, the following facts appear or may reasonably be inferred:

The offense of which defendant was found guilty was the alteration

or "raising" of a silver certificate of the United States from $1 to $10 and fraudulently passing the same at its raised value on the person named in the indictment. It would seem that defendant by long practice had become expert in this particular form of swindling. His method of operation was to call upon the keeper, usually a woman, of a cheap lodging house, engage a room, tender the raised certificate for payment in advance, receive in change the difference between the price paid for the room and the apparent amount of the bill, and then disappear. This performance was repeated a great many times and in numerous places. It is probable that in most instances he escaped detection, but he was sometimes caught and punished. It was testified that he had served a term of imprisonment for the same offense in Illinois, in Michigan, in Kansas, and two terms in the penitentiary at Atlanta, Ga. He admitted on cross-examination:

"That for a period of many years, perhaps as many as 20, he had been frequently arrested in different parts of the country for doing precisely the thing charged in the indictment; that sometimes he had pleaded guilty, sometimes he had served sentences, and sometimes had been paroled."

When arraigned on the indictment set forth in the record, in November, 1913, he admits that he pleaded guilty, but the District Judge, for reasons which can only be inferred, refused to accept the plea and allowed him to go on his own recognizance, on condition that he would abandon his criminal practices and thereafter conduct himself as a law-abiding citizen. But instead of keeping his promise in this regard it is alleged that within a few months he was found engaged in the same contemptible operations in another part of the country. He was apprehended, brought back to Baltimore, tried and convicted, though protesting his innocence, in May, 1914, and sentenced as above stated.

Within the required time he applied for a writ of error, which was granted, but the District Judge refused to sign or allow the bill of exceptions which he presented, because, as the correspondence discloses, (1) it was not presented within the time fixed by a rule of the court; (2) because it did not state correctly the testimony in the case or the action of the court; and (3) because no exceptions were taken in the course of the trial. It appears that no stenographer was present, and no record made of the testimony or charge to the jury; and it was admitted in argument that no objection was made or exception taken to anything that transpired during the trial, including the entire testimony for the government and the instructions given to the jury. As the accused was defended by a lawyer of experience and high standing at the Baltimore bar, the fact that no objection was made creates the strongest presumption that the trial was in all respects fairly conducted.

Nevertheless it is insisted that the judgment should be reversed and the defendant granted a new trial because of error alleged to be "so grave and glaring" that this court should grant relief the same as though challenged by formal exception. The injustice charged is based in the main on a single occurrence at the trial which presents the only question that needs to be considered. As to the proceedings in court

when defendant was tried we have no information, for reasons above stated, except the certificate of the District Judge prepared and transmitted at our request. In this certificate the occurrence referred to is narrated as follows:

"The court asked him whether he had, prior to the time of the alleged conversation with the witnesses Wright and Bradley, and prior to his having been brought to Maryland to answer the charge, written or procured others to write to the judge letters in which his guilt was admitted and in which the judge was asked to suspend sentence upon him. The traverser answered that he had. The court then asked him why, if he had not committed the offense, he had done so, and the prisoner answered in substance that he had had so much trouble with charges of this kind that he thought that was the safest way to deal with it."

This action of the trial judge and the questions put by him are alleged to be so improper and illegal "that the statement thereof without argument suffices to establish the right of the plaintiff in error to a reversal of the conviction and judgment below." Despite this confident assertion we are of opinion that the contention should not be sustained for reasons that will be briefly indicated.

In the first place we cannot estimate the effect of the colloquy upon the minds of the jury without fuller knowledge of the circumstances under which it took place. Assuming that the questions asked by the court are open to technical objection, and chiefly because they were asked from the bench, it does not follow that such prejudice resulted as should require a reversal of the judgment. Apparently the able counsel defending the accused did not regard the inquiry as improper or unfair, because he made no protest or objection. His failing to do so implied assent to the action of the court as entirely legitimate. There was no request for the production of the letters and no suggestion that the full disclosure of their contents would present the matter in any aspect more favorable to the defendant. Indeed, it is fairly inferable that the occurrence in question was a mere incident, of which little notice was taken at the time, and which no one regarded as liable to improperly influence the jury. In short, we are not persuaded that the action of the court was seriously objectionable, under the circumstances then existing, or that it operated in a legal sense to the prejudice of defendant.

In the second place the testimony which constituted the government's case was sufficient to justify the jury in believing the defendant guilty beyond a reasonable doubt, and we perceive no ground on which they could have failed to find an adverse verdict if the questions asked by the court had not been propounded. Two witnesses testified that the defendant freely and voluntarily confessed to them that he had committed the offense charged in the indictment, and this with the other testimony was ample for conviction without taking into account the letters which asked suspension of an anticipated sentence.

We yield the fullest assent to the doctrine that appellate courts should not affirm an unjust conviction because formal objection was not made, when the record discloses plain error in a matter vital to the defeated party. Wiborg v. United States, 163 U. S. 632, 16 Sup. Ct. 1127, 41 L. Ed. 289; Clyatt v. United States, 197 U. S. 207, 25 Sup. Ct. 429, 49 L. Ed. 726; Crawford v. United States, 212 U. S.

183, 29 Sup. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392. But this beneficent rule of law, established for the purpose of preventing a miscarriage of justice, may not be invoked to give a new trial to a chronic criminal, self-confessed and proven, who seeks to escape the consequences of repeated wrongdoing by a belated charge of error—if error there was in this case—to which no objection was made at the time when it could have been wholly corrected.

We are satisfied that the defendant had a fair and impartial trial, and that no sufficient reason appears for disturbing the judgment.

Affirmed.

WOODS, Circuit Judge (concurring). I think the questions asked by the trial judge were clearly improper. If a judge has in his possession evidences of a defendant's guilt or innocence they can be adduced for or against him only by examination and cross-examination of the judge on the witness stand at a trial presided over by another judge. It seems clear beyond argument that it would be fatal to any conviction of crime that it was founded on references by the trial judge to facts within his knowledge. Indeed, a judge presiding at a trial is not a competent witness, for the duties of a judge and a witness are incompatible. If he testifies he would have to pass upon the competency of his own testimony; and as a witness he might be regarded a partisan, and would be subject to embarrassing conflicts with counsel. The danger to the dignity of the bench, of subjecting its impartiality to doubt and of placing the defendant at an unfair disadvantage by admitting the presiding judge as a witness is very obvious. People v. Dohring, 59 N. Y. 374, 17 Am. Rep. 349; Rogers v. State, 60 Ark. 76, 29 S. W. 894, 31 L. R. A. 465, 46 Am. St. Rep. 154; Estes v. Bridgforth, 114 Ala. 221, 21 South. 512; 23 Cyc. 589.

No one could be more jealous of the obligations of the bench in these respects than the fair and learned judge who fell into the inadvertence of asking the defendant questions as to letters acknowledging guilt written to him by or on behalf of defendant. Even the most careful judge however cannot always guard against errors which afterwards seem obvious. The inadvertence was no doubt due to the conviction of the judge that the defendant was trifling with the court, and to the surprise of the judge at the denial of guilt which the defendant had before offered to admit.

I agree, however, that the error was harmless in this case. The competent evidence against the defendant could not have left any doubt of his guilt in the minds of the jury. By his own admissions on the stand he was a professional criminal in raising the denominations of currency bills. He had before offered in open court a plea of guilty to the charge here involved. The woman upon whom he practiced the imposition in this case identified him with reasonable certainty. Two witnesses testified to his full confession. Against all of this there was nothing but his own denial. Under these circumstances I do not think it possible that defendant could have escaped conviction on the competent evidence. The error should, therefore, be regarded harmless.

PRITCHARD, Circuit Judge, dissents.