STATE OF NEBRASKA, APPELLEE, V. JAMES L. GILLETTE, APPELLANT.

357 N.W.2d 472

Filed November 9, 1984.   No. 84-322.

Daniel E. Wherry of Johnston, Barber, Wherry & Knight, for appellant.

Richard T. Smith, Gage County Attorney, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

Defendant, James L. Gillette, was convicted on his guilty plea that on June 4, 1982, he caused to be made false statements or false bank entries in the books of First Security Bank and Trust, Beatrice, Nebraska (Security Bank). Neb. Rev. Stat. § 8-175 (Reissue 1983). The penalty for this Class III felony is 1 to 20 years' imprisonment, or $25,000 fine, or both. Neb. Rev. Stat. § 28-105 (Reissue 1979).

Defendant appeals his sentence of 16 months to 2 years, claiming these errors: (1) The trial court abused its discretion by considering irrelevant and unsubstantiated facts contained in the presentence report, including the Federal Bureau of Investigation reports; (2) The sentence is excessive and constitutes cruel and unjust punishment; and (3) The trial judge erred in not disqualifying himself because of an appearance of bias and because he was indirectly interested.

Defendant, a college graduate, age 40, is married to Nancy Copple; they are the parents of two minor children. At the time of the offense, defendant was president of Security Bank, which he acquired in 1980 along with First Security Savings Company, Beatrice, Nebraska (Security Savings), from Nancy's grandfather, S. E. Copple.

Prior to the guilty plea, defendant, his wife Nancy, and the Gage County attorney signed a written plea agreement providing (1) no further criminal charges would be filed against either defendant or Nancy Gillette as regarding Security Bank and Security Savings, and (2) defendant and Nancy would cooperate with the county attorney and federal authorities and "[i]n any criminal investigations concerning conduct of public officials or others in regards to the above-named institutions and Commonwealth Savings Company of Lincoln, Nebraska."

The thrust of defendant's first error assignment is that the presentence report contained information concerning other unproven state and federal bank violations that in some way involved defendant and that they should not be considered by

the sentencing judge.

> The presentence investigation and report shall include, when available, an analysis of the circumstances attending the commission of the crime, the offender's history of delinquency or criminality, physical and mental condition, family situation and background, economic status, education, occupation and personal habits, and any other matters that the probation officer deems relevant or the court directs to be included.

Neb. Rev. Stat. § 29-2261(3) (Cum. Supp. 1984).

> It is a long accepted practice in this state that before sentencing a defendant after conviction a trial judge has a broad discretion in the sourse [sic] and type of evidence he may use to assist him in determining the kind and extent of punishment to be imposed within the limits fixed by statute. Highly relevant, if not essential, to his determination of an appropriate sentence is the gaining of knowledge concerning defendant's life, character, and *previous conduct*. In gaining this information, the trial court may consider reports of probation officers, police reports, affidavits, and other information including his own observations of the defendant. A presentence investigation has nothing to do with the issue of guilt. . . . *The latitude allowed a sentencing judge at a presentence hearing to determine the nature and length of punishment, other than in recidivist cases, is almost without limitation as long as it is relevant to the issue.*

(Emphasis supplied). *State v. Rose*, 183 Neb. 809, 811, 164 N.W.2d 646, 648-49 (1969); *State v. Harrington*, 202 Neb. 356, 275 N.W.2d 294 (1979).

In *Harrington*, a forgery case, it was held relevant for the court to consider " 'that you engaged in a deliberate and premeditated course of conduct over a period of 42 days which involved 5 separate incidents of embezzlement; while you're not charged with embezzlement, I think I'm entitled to consider that and have to consider that. . . .' " *Id*. at 358, 275 N.W.2d at 296.

The presentence report, prepared by a state probation officer, consisted of (1) general background information; (2)

two lengthy statements given by defendant to Richard T. Smith, Gage County attorney, relating to a wide range of banking law violations, both state and federal; (3) a copy of an FBI investigative report dated June 16, 1983, concerning federal bank violations involving the Security Bank and other institutions; and (4) more than 50 personal, good character letters from defendant's friends and acquaintances. The full report was examined and studied by defendant's counsel and the sentencing judge. Defendant added to the report by furnishing documents showing that his residence in Tucson, Arizona, was in foreclosure and that his business assets had little value.

This colloquy occurred at the beginning of the sentencing hearing:

> THE COURT: The presentence investigation report proper deals with the matters in Gage County. The FBI reports in particular and some of the matters in the statements to Mr. Smith deal with matters involving other jurisdictions and possible charges against other people. Those the Court has excluded from its consideration and limits itself to those matters dealing with the Gage County institutions. . . .

> MR. WHERRY: I realize that, and I appreciate that, your Honor, and with regard to and specifically on that, with regard to some of those matters that relate to the Beatrice situation that are included in the FBI report, I think it's fair to say that Mr. Gillette does not totally agree with all the conclusions that were reached by the FBI with regard to some of the other transactions.

Later, counsel made reference to defendant's faith and reliance on S. E. Copple and other Copple family members with whom "in-house" unsecured bank loans were made and that these were a part of his "sloppy" banking practices. Defendant's only statement to the court was, "I'm sorry."

Counsel's concluding statement was prefaced: "In summary, all we can say is that we know the Court has tried its best to separate the Beatrice problem from all the other matters of Commonwealth . . . ."

The record clearly shows that the judge limited his

consideration of the report to relevant information; there was no abuse of discretion.

Next, defendant contends his sentence is excessive, claiming probation should have been granted, since he met the statutory grounds to be accorded weight in favor of withholding sentence, Neb. Rev. Stat. § 29-2260(3) (Cum. Supp. 1984), particularly, (1) the crime neither caused nor threatened serious harm; (2) the offender has no prior criminal history and has led a law-abiding life prior to the crime charged; (3) the crime was the result of circumstances unlikely to recur; (4) defendant is unlikely to commit another crime; (5) defendant would respond to probation; and (6) imprisonment would cause excessive hardship on his family.

The judge addressed all of these claims of defendant, and then concluded:

> Of course, the sad fact is that in all of these situations, when a man falls as Mr. Gillette has fallen here, his family are the innocent victims of his acts, and unfortunately there's not a great deal that this Court can do about it. There are a number of things Mr. Gillette's attorney has suggested that would be a basis for this Court granting probation. And in other circumstances, that might be a viable alternative. Certainly the Court has studied it carefully here. But there is riding above all these other things that are in a sense in Mr. Gillette's favor, the facts that he knowingly engaged in a prolonged pattern of false and fraudulent transactions, and the worst part of it all is that in doing that, he treated these financial institutions as if they were his own private operations . . . . I certainly will take into account these matters in the imposition of sentence . . . .

Probation was then denied and sentence imposed.

> The rule is firmly established in this state that in the absence of an abuse of discretion, a sentence imposed within statutory limits will not be disturbed on appeal. . . . It is also the rule in this jurisdiction that an order or sentence of the trial court denying probation will not be overturned on appeal unless there has been an abuse of discretion.

*State v. Bridgmon*, 196 Neb 714, 717-18, 246 N.W.2d 57, 59 (1976).

That part of § 29-2260(2) providing that the court "may withhold sentence of imprisonment" is a guideline for the court and is not mandatory. See *State v. Hunt*, 214 Neb. 214, 333 N.W.2d 405 (1983).

The record supports the court's finding that to withhold a sentence of imprisonment would depreciate the seriousness of the offense. § 29-2260(2)(c). There was no abuse of discretion. The sentence imposed was not excessive, it being within the statutory limits.

Finally, defendant claims error of prejudice and bias on the part of the judge because the judge's brother and sister-in-law were unpaid depositors in the insolvent Commonwealth Savings Company, Lincoln, Nebraska, which company was founded and owned by S. E. Copple, Nancy Gillette's grandfather. Neb. Rev. Stat. § 24-315 (Reissue 1979) provides:

> A judge or justice is disqualified from acting as such in the county, district or Supreme Court, except by mutual consent of the parties, in any case wherein he or she is a party or interested, or where he or she is related to either party by consanguinity or affinity within the fourth degree . . . .

The word "interested" in that statute has long been interpreted as one of a pecuniary nature. See *Uerling v. State*, 125 Neb. 374, 250 N.W. 243 (1933). See, also, 46 Am. Jur. 2d *Judges* § 99 (1969).

"A party seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality." *Arnholt v. Arnholt*, 129 Mich. App. 810, 817, 343 N.W.2d 214, 218 (1983). See, also, *State v. Smith*, 77 Neb. 824, 110 N.W. 557 (1906); 46 Am. Jur. 2d, *supra*, § 220.

AFFIRMED.