STATE OF NEBRASKA, APPELLEE, V. SCOTT DONDLINGER, APPELLANT.

386 N.W.2d 866

Filed May 16, 1986.   No. 85-501.

Frank J. Daley, Jr., of Germer, Koenig, Murray, Johnson & Daley, for appellant.

Robert M. Spire, Attorney General, and Dale D. Brodkey, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Scott Dondlinger appeals convictions for first degree sexual assault, Neb. Rev. Stat. § 28-319(1)(a) (Reissue 1979), and use of a firearm to commit a felony, Neb. Rev. Stat. § 28-1205(1) (Reissue 1979). Dondlinger was convicted by a jury in the district court for Thayer County. We affirm.

The victim, a 16-year-old male, was visiting relatives in Chester during July 1984. On the evening of July 31, the victim, while walking in downtown Chester, encountered Dondlinger and three teenagers talking near Dondlinger's pickup. The victim introduced himself to Dondlinger and the others. After they had talked awhile the five decided to purchase some beer and climbed into Dondlinger's pickup. Dondlinger, age 20, purchased a case of beer and drove his four companions to a

field near Chester, where the five remained until shortly before midnight. Sometime after midnight the group went to Dondlinger's home outside Hebron. From Dondlinger's home the victim telephoned his relatives, who instructed the victim to return home immediately. Dondlinger offered to drive the victim home, and the two left in Dondlinger's pickup. After traveling various paved and dirt roads, Dondlinger stopped 4 or 5 miles south of Hebron on "Herb Weidel Road." The only light came from the pickup's headlights. There were no buildings nearby, and the victim was totally unfamiliar with the vicinity.

Dondlinger got out of the pickup on the driver's side, urinated in the middle of the road, returned to the pickup, produced a revolver, pointed that firearm at the victim, and directed the victim "to get out of the truck." The victim initially "thought [Dondlinger] was joking" but got out of the pickup on the passenger's side and walked in front of the pickup. When the victim reached the area in front of the vehicle, Dondlinger told the victim to "take [his] clothes off." Although not pointing the revolver directly at the victim, Dondlinger was brandishing the firearm, "shaking [it] around." The victim realized Dondlinger was "serious" and began running around the pickup, attempting to keep the vehicle between himself and Dondlinger. In circling the pickup, Dondlinger eventually reached a location where he had a "clear shot" at the victim, who then stopped and obeyed Dondlinger's commands to "get out in front of the truck" and "take your clothes off." As he was removing his clothing, the victim pleaded with Dondlinger to take him home. Dondlinger was 6 feet 1 inch tall and weighed approximately 180 pounds, while the victim was 5 feet 9 inches tall and weighed approximately 130 pounds.

Dondlinger placed the revolver on the vehicle's hood. The victim picked up the revolver, but Dondlinger "grabbed the gun" from the victim and stated, "You should have shot me while you could." At that point Dondlinger shoved the victim to the ground and performed sexual acts on the victim, including fellatio and digital penetration of the victim's anus. Dondlinger told the victim there would be "trouble" if the sexual acts were not performed. Throughout this time, the victim did not observe the location of the revolver previously brandished by

Dondlinger, but, while returning to town in the pickup, the victim saw the revolver on the seat next to Dondlinger, who was driving the vehicle. As soon as Dondlinger stopped his pickup near the house where the victim was staying, the victim got out and ran into the house, where he described the assault by Dondlinger. The victim's relatives contacted the sheriff's department and then drove the victim to a hospital for a medical examination and emergency treatment.

In response to the victim's complaint, three officers of the Thayer County Sheriff's Department drove to Dondlinger's home around 3 a.m. Officer Gerald Shepard knocked on the front door and, when Dondlinger answered, informed him that "he was under arrest for sexual assault." Dondlinger, partially clad, asked if he could get dressed. While Dondlinger was dressing, Shepard advised him of his *Miranda* rights, which Dondlinger acknowledged he understood. When Shepard asked about what had occurred earlier that night, Dondlinger replied: "Well, I guess you already know that or you wouldn't be here now," continuing; "probably something I should not have been doing . . . a little sexual abuse, that's what you call it, isn't it?" On inquiry about the gun involved in the incident, Dondlinger "said it was between the mattresses" in his bedroom and led the officers to the revolver.

At the "law enforcement center," Shepard asked Dondlinger "if he would write a statement as to what had happened that night." Dondlinger complied and wrote the following:

> Drove from my house . . . . Stopped and went to the bathroom told him to take off his Clothes and [perpetrated fellatio on the victim]. Never once did I hit or threaten him. I did have a pistol. It was never Loaded never aimed or pointed in anyone's direction. Got into pickup and took him home.

On August 30, 1984, the State charged Dondlinger in an information alleging Dondlinger's commission of two felonies—first degree sexual assault, § 28-319(1)(a) (subjecting another to sexual penetration and overcoming the victim by force, threat of force, express or implied, coercion, or deception), and use of a firearm to commit a felony, § 28-1205(1). On October 22 Dondlinger filed a "Motion

for Disqualification of Presiding Judge," claiming that the prospective trial judge had made a derogatory statement in March 1984 about Dondlinger during a "government day" attended in the district courtroom by some local high school students, school officials, and six members of the Thayer County Bar Association. At an evidentiary hearing on Dondlinger's motion, various participants of that "government day" testified regarding the nature of the judge's comment about Dondlinger. Generally, the witnesses recalled that the judge had remarked about the amount of teenage "partying" in the county, mentioned Dondlinger as a possible sponsor of the activity, and suggested that students avoid Dondlinger, because association with him might be "detrimental to their well being." In conjunction with his motion to disqualify the judge, Dondlinger argued that the district judge's presiding over Dondlinger's trial would "create an appearance of impropriety" and "create an atmosphere which is prejudicial to [Dondlinger] and which will deny [him] his right to a fair and impartial jury trial." On December 12 the district court overruled Dondlinger's motion for disqualification.

Dondlinger's jury trial commenced on February 6, 1985. The State first called the victim, who testified in detail about the events surrounding and comprising the sexual assault but conceded that he had not seen the revolver during the course of the various sexual acts with Dondlinger. In response to a question seeking an explanation for the victim's submission to Dondlinger's demands, the victim testified that he had submitted "[b]ecause if I didn't, I thought he'd shoot me and [I would] wind up dead someplace." The physician who had examined the victim at the hospital testified concerning the victim's physical injuries visible during such examination. Members of the sheriff's department testified concerning their contact with Dondlinger after the assault, including Dondlinger's statements made to the officers.

Dondlinger's defense focused primarily on the questions whether Dondlinger used force to achieve the sexual acts with the victim and whether the revolver was used to commit that first degree sexual assault. During his testimony, Dondlinger acknowledged that he had "pulled out a gun" and directed the

victim to remove his clothes but denied pointing the revolver at the victim. Dondlinger testified that the revolver was not loaded and that he did not intend to "hurt" or "threaten" the victim in any manner, including any threat with the revolver.

The court, over Dondlinger's objection, gave instruction No. 4 as follows:

The Statutes of the State of Nebraska in full force and effect at the time alleged in the information provided, in substance, as follows:

Sexual penetration shall mean sexual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the accused's body . . . .

Fellatio means an act committed with the mouth and male sex organ or an oral-genital contact.

Victim shall mean the person alleging to have been sexually assaulted.

Any person who subjects another person to sexual penetration and overcomes the victim by force, threat of force, express or implied, coercion, or deception is guilty of sexual assualt [sic] in the first degree. . . .

. . . .

Any person found guilty of such statutes shall be punished as provided by law.

The court also gave instruction No. 5, which, in pertinent part, provided:

The material elements which the State must prove by evidence beyond a reasonable doubt in order to convict the defendant of sexual assault in the first degree are:

1. That [the victim] suffered sexual penetration;

2. That Scott Dondlinger subjected [the victim] to such penetration;

3. That Scott Dondlinger overcame [the victim] by force or by threat of force either expressed or implied; and

4. That such facts happened or were in existance [sic] on or about the thirty-first day of July, 1984, in Thayer County, Nebraska.

The State has the burden of proving beyond a reasonable doubt each and every one of the foregoing

material elements.

The jury found Dondlinger guilty of both charges. On April 11, 1985, the district court sentenced Dondlinger to consecutive terms—3 to 10 years for first degree sexual assault and 1 year for use of a firearm in the commission of that sexual assault.

Dondlinger asserts six assignments of error, which can be condensed to three contentions: (1) The evidence is insufficient to sustain the convictions; (2) Instruction No. 4 is incorrect; and (3) The district judge should have disqualified himself from the proceedings against Dondlinger.

Dondlinger first argues that evidence is insufficient to sustain his conviction for first degree sexual assault, contending that the record does not support a finding that force was used to compel the victim's participation in the various sexual acts. Specifically, Dondlinger maintains that the revolver was not visible to the victim during the course of the sexual acts, that Dondlinger did not strike the victim, and that he did not threaten the victim's life once the sexual acts were commenced.

Section 28-319(1)(a) requires the State, in a prosecution for first degree sexual assault, to prove beyond a reasonable doubt that the defendant overcame the victim "by force, threat of force, express or implied, coercion, or deception."

> In determining whether evidence is sufficient to sustain a conviction in a jury trial, this court does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented to a jury—all of which is within a jury's province for disposition. A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that verdict.

*State v. Schott, ante* p. 456, 462, 384 N.W.2d 620, 624-25 (1986).

Where there is a genuine or real question of fact regarding a victim's lack of consent regarding an alleged first degree sexual assault, it is not within the province of the Supreme Court to reconsider the factual matters resolved by the jury in reaching a verdict that a defendant overcame the victim "by force, threat of force, express or implied, coercion, or deception." See, *State v. Pankey*, 202 Neb. 595, 276 N.W.2d 233 (1979); *State v. Kelly*,

193 Neb. 494, 227 N.W.2d 848 (1975).

In his statement given to personnel of the sheriff's department and during his testimony in his own defense, Dondlinger admitted that fellatio, as sexual penetration, had taken place involving the victim and that Dondlinger had a revolver in his hand immediately before occurrence of the sexual act with the victim. Also, there was competent evidence before the jury that Dondlinger was some 50 pounds heavier than his victim, pointed the revolver at the victim, waved the weapon in a threatening manner, directed the victim to remove his clothes, grabbed and shoved the victim to the ground, demanded that the victim perform various sexual acts, and threatened the victim during the performance of the sexual acts. The victim testified that he complied with Dondlinger's sexual demands out of fear that Dondlinger would shoot and kill him. That the revolver was not at all times immediately visible to the victim throughout the course of sexual acts with Dondlinger does not, as a matter of law, preclude the trier of fact from reaching the conclusion that force was involved to achieve the sexual acts. There is ample evidentiary justification for the jury's verdict concluding that force or threat of force permeated the atmosphere surrounding the sexual acts and that Dondlinger overcame his victim "by force [or] threat of force, express or implied."

Dondlinger also maintains that the evidence does not support his conviction for use of a firearm to commit a felony in violation of § 28-1205(1). *Use* means "to carry out a purpose or action by means of : make instrumental to an end." Webster's Third New International Dictionary, Unabridged 2524 (1981). In order to subject a victim to the act of sexual penetration by force or threat through use of a firearm, it is not necessary that a victim stare pointblank into the barrel of a leveled firearm or experience such firearm pressed menacingly against the victim's body. For use of a firearm to subject a victim to sexual penetration by force or threat of force, § 28-319(1)(a), it is only necessary that the victim be aware of the firearm's presence; that the assailant, in proximity to the firearm and knowing the firearm's location, has realistic accessibility to that firearm; and that the victim reasonably believes that the assailant will

discharge the firearm to harm the victim unless the victim submits to the act of the assailant. Cf. *People v Davis*, 101 Mich. App. 198, 300 N.W.2d 497 (1980) (defendant, who had been carrying a rifle, sexually assaulted his victim while the rifle was lying 6 feet away during the assault; held, defendant was "armed with a weapon" to commit the sexual assault, a circumstance allowing conviction of first degree criminal sexual conduct in violation of Michigan's criminal code). Dondlinger admitted his possession of the revolver immediately before the sexual assault. The victim's testimony supplied additional factual basis for the jury's conclusion that Dondlinger had used a firearm in commission of a first degree sexual assault on the victim.

Next, Dondlinger contends the district court erred in giving instruction No. 4. Dondlinger argues that the instruction is "misleading and confusing" because the instruction suggested to the jury that "if the evidence showed that an act of fellatio had occurred, then a crime had been committed." Brief for Appellant at 11. To buttress his argument Dondlinger refers to the instruction's first sentence, which indicates that everything in the instruction is contained in Nebraska statutes, and the instruction's last sentence, "Any person found guilty of such statutes shall be punished as provided by law." Since the instruction also defined fellatio as an "act *committed* with the mouth and male sex organ" (emphasis supplied), Dondlinger maintains that the instruction allows the jury to mistakenly conclude that the act of fellatio, itself, constitutes a basis for finding Dondlinger guilty of sexual assault.

Prejudicial error regarding jury instructions may not be predicated solely upon a particular sentence or phrase in an isolated instruction, but must appear from consideration of the entire instruction of which the questioned sentence or phrase is a part, as well as consideration of other relevant instructions given to the jury. See *Meyer v. Moell*, 186 Neb. 397, 183 N.W.2d 480 (1971). As this court expressed in *State v. Bartholomew*, 212 Neb. 270, 275, 322 N.W.2d 432, 436 (1982): " 'All the instructions must be read together and if the instructions taken as a whole correctly state the law, are not misleading, and adequately cover the issues, there is no prejudicial error.' " See,

also, *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984).

Although instruction No. 4, as a definitional instruction, appears to equate performance of the sexual act with the element of force or threat of force necessary for first degree sexual assault, instruction No. 5 specifically and unambiguously delineates the separate elements of first degree sexual assault which the State is required to prove by evidence beyond a reasonable doubt, including: "3. That Scott Dondlinger overcame [the victim] by force or by threat of force either expressed or implied." Instruction No. 5 clearly states that the act of sexual penetration is only one of the elements which the State must prove beyond a reasonable doubt to convict Dondlinger of first degree sexual assault. When instructions Nos. 4 and 5 are read together and in their entirety, the instructions properly informed the jury concerning the elements which must be established by evidence beyond a reasonable doubt to permit a verdict of guilty on the charges alleged against Dondlinger.

Regarding instruction No. 4, Dondlinger also claims that the court erred in providing the jury with a definition of *fellatio*, a term contained in the statutory definition of "sexual penetration." See Neb. Rev. Stat. § 28-318(6) Cum. Supp. 1984). Dondlinger concedes that the court's instructional definition of *fellatio* is "essentially correct," but points out that fellatio is not statutorily defined and argues that it is "confusing to a jury" to use a definitional instruction based on nonstatutory sources to supply explanation for a statutory term. Brief for Appellant at 11. In substance, Dondlinger maintains that only definitions provided by statute should be used in jury instructions for criminal cases. Dondlinger was charged with a crime involving "sexual penetration," which may be accomplished by certain acts not having an "ordinary meaning," to use the language of the definitional statute pertaining to sexual assaults. See § 28-318(6). Although there may be lack of a correct definition statutorily prescribed or judicially dictated, it would be a paradox that an accused is unfairly prejudiced by an instruction correctly defining terms necessary to resolve an issue submitted to a jury. Without an adequate and correct definition of the elements to be proved,

the essential nature of a crime charged is not disclosed to a jury, a situation hardly conducive to a defendant's fair trial on the accusation of a crime. There is no error from the court's instruction No. 4 defining the term *fellatio* as an element of the crime charged against Dondlinger.

Finally, Dondlinger contends that the district court judge should have disqualified himself from presiding in Dondlinger's trial. Dondlinger does not contend that the district court judge was statutorily disqualified under Neb. Rev. Stat. § 24-315 (Reissue 1979), but maintains that the judge, "having taken a public position on [Dondlinger's] activities, should have recused himself from participating in [Dondlinger's] case and presiding over [Dondlinger's] trial." Brief for Appellant at 9.

" 'A party seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality.' " *State v. Gillette*, 218 Neb. 672, 677, 357 N.W.2d 472, 476 (1984).

A motion to disqualify a trial judge on account of prejudice is addressed to the sound discretion of the trial court. [Citation omitted.] Generally, the ruling on a motion to disqualify a trial judge on the ground of bias and prejudice will be affirmed on appeal unless the record establishes bias and prejudice as a matter of law.

*In re Estate of Odineal*, 220 Neb. 168, 174, 368 N.W.2d 800, 804 (1985) (quoting *Kennedy v. Kennedy*, 205 Neb. 363, 287 N.W.2d 694 (1980)).

Although Dondlinger claims that the trial judge's pretrial statement about Dondlinger's activities establishes prejudice, Dondlinger has not directed our attention to any aspect of the proceedings indicating or demonstrating the trial judge's alleged prejudice or bias. The trier of fact in Dondlinger's case was a jury, not the district judge. Dondlinger has not raised any question regarding the sentence imposed. By any analysis, Dondlinger has not met his burden of establishing, with particularity, in what manner any judicial conduct resulted in prejudicial disposition of the charges and case against Dondlinger.

The judgment of the district court is correct in all respects and is affirmed.

AFFIRMED.