JACK CLINE ET AL., APPELLANTS, V.
FRANKLIN PORK, INC., APPELLEE.

313 N.W.2d 667

Filed December 28, 1981.   No. 43460.

Thomas P. McNally of McKelvie & McNally and William H. Stowell for appellants.

Crosby, Guenzel, Davis, Kessner & Kuester for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

This is an action by the plaintiffs, Jack Cline and Ruth Cline, to enjoin the defendant, Franklin Pork, Inc.,

from the operation of a pig-feeding operation. The plaintiffs alleged that the operation constitutes a nuisance and interferes with the plaintiffs' use and enjoyment of their home and farm.

Plaintiffs are the owners and occupants of a farm in Franklin County, Nebraska. The farm was purchased on March 14, 1974, and plaintiffs have lived there since July 1974. Their farmland is used primarily for the raising of crops; however, a few horses and cattle are kept on the premises.

The defendant, Franklin Pork, Inc., was incorporated on July 11, 1974, and purchased the farmland north of the Clines' farm on August 15, 1974. After receiving complaints and opposition to construction of a hog facility from adjoining neighbors, including the Clines, the defendant constructed a hog facility with a capacity of 800 sows and 6,000 to 7,000 head of hogs. The facilities include five feeding floors, five nurseries, five sets of isolettes, and five sow-raising floors, in addition to three holding ponds maintained to catch runoff water and manure from the feedlots.

At the conclusion of the trial, the trial court found that a nuisance existed. The trial court in its order of April 3, 1979, stated: "2. No final order as to a remedy for plaintiffs or the issuance of an injunction to enjoin the defendant from the continued operation of its hog-raising facility at its present location should be entered at this time but should be reserved for final determination at a date subsequent hereto so as to afford the Court the opportunity to monitor the continuing operation of the defendant's facility and determine whether or not the defendant can abate the nuisance to the plaintiffs' property." The trial court appointed a monitoring team consisting of District Judge Fred Irons, the presiding judge, District Judge Bernard Sprague, and a representative of the Nebraska Department of Environmental Control. The order provided that the monitoring team was to make periodic inspections and reports to the court. The court would provide summaries of the

reports to the attorneys for the parties. Neither of the parties objected to the appointment of the monitoring team at the time of the order. From April 14, 1979, through November 1, 1979, the monitoring team made several inspections of the area surrounding Franklin Pork, Inc., and the Cline residence. Reports were made to the trial court and were subsequently summarized and sent to the parties. On November 26 and 27, 1979, and January 7, 1980, a further hearing was held to determine whether the defendant had taken appropriate action and made substantial progress in reducing the level of flies and odor to an acceptable level. At the conclusion of the hearing, the trial court found that the nuisance previously found to exist had been corrected and that the defendant's operation did not materially interfere with the plaintiffs' use and enjoyment of their premises, and dismissed plaintiffs' petition. The plaintiffs appeal from that decision.

Since this is an equity action, it is the duty of this court to try the issues de novo and to reach an independent conclusion without reference to the findings of the District Court. *Daugherty v. Ashton Feed and Grain Co., Inc.*, 208 Neb. 159, 303 N.W.2d 64 (1981); *Prauner v. Battle Creek Coop. Creamery*, 173 Neb. 412, 113 N.W.2d 518 (1962). We are reminded that even though this is an equity action and upon appeal it is triable de novo, it is still subject to the condition that when the evidence on material questions of fact is in irreconcilable conflict, the court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite. *Tilden v. Beckmann*, 203 Neb. 293, 278 N.W.2d 581 (1979); *Rolfsmeyer v. Seward County*, 182 Neb. 348, 154 N.W.2d 752 (1967).

The plaintiffs, in their first assignment of error, allege that the trial court erred in failing to immediately enjoin the operation of the pork facility at the end of the first trial. Ordinarily, a legitimate business

enterprise is not a nuisance per se, but it may become a nuisance in fact. It may become such by reason of the conditions implicit in and unavoidably resulting from its operation or because of the manner of its operation. *Botsch v. Leigh Land Co.*, 195 Neb. 509, 239 N.W.2d 481 (1976); *City of Syracuse v. Farmers Elevator, Inc.*, 182 Neb. 783, 157 N.W.2d 394 (1968).

The exercise of due care by the owner of a business in its operation is not a defense to an action to enjoin its operation as a nuisance. See *Botsch, supra.*

At the conclusion of the trial, the judge found that the existence of the conditions clearly established that the defendant's hog operations constituted a nuisance. The plaintiffs contend that at that point the trial judge should have enjoined the defendant's operations. We disagree with the plaintiffs' contentions.

This court has said: "The corruption of the atmosphere by the exercise of any trade or by any use of property that impregnates it with noisome stenches has ever been regarded as among the worse class of nuisances. The right to have the air floating over one's premises free from noxious and unnatural impurities is a right as absolute as the right to the soil itself . . . ." *Francisco v. Furry*, 82 Neb. 754, 755-56, 118 N.W. 1102, 1102-03 (1908).

We quoted *Baldwin v. McClendon*, 292 Ala. 43, 288 So. 2d 761 (1974), in *Botsch, supra.* In *Baldwin,* a large hog-raising operation, with lagoons, located in a strictly farm area was held to be a nuisance. The waste material in the lagoons generated offensive odors. The court in *Baldwin* held: "Fact that hog-raising operation was carried on in a rural community given over almost entirely to agricultural pursuits was a factor to be considered in determining whether odors emanating from the property constituted a nuisance, but there were other factors, including proximity of the operation to neighbors' home, intensity and volume of odors, their interference, if any, with neighbors own well-being and enjoyment of their home and any consequential de-

preciation in the value of the home." (Syllabus of the court.) The court further stated at 53, 288 So. 2d at 769: "Moreover, assuming that the appellants' operation met some set of sanitary standards for similar operations, this would not affect the appellee's right to equitable relief, because the issue is not whether the appellants were negligent . . . or their business lawful, but whether or not from the inherent qualities of the business, or the manner in which it is conducted, it directly causes substantial injury to the properties of the appellees, or produces material annoyance and inconvenience to them in the comfortable enjoyment of their home." The continuation of the hearing to determine if the nuisance could be abated was well within the discretion of the trial court in view of the enormous economic consequences attendant to a complete shutdown of the operation. We agree with that decision of the trial court. The assignment is without merit.

The facts show that the plaintiffs' home is located between 1,030 feet and 1,430 feet from the nearest holding pond on the defendant's land. The plaintiffs' land is located south and downhill from the defendant's land. A draw runs on the west side of the plaintiffs' home. Terry Johnson of the Department of Environmental Control testified that the odor and flies at Franklin Pork were no more offensive or extensive than could be expected for that size of operation. However, as *Baldwin* pointed out, standards from similar operations do not affect plaintiffs' right to equitable relief. The fact that the residence is in a rural area requires an expectation that it will be subjected to normal rural conditions but not to such excessive abuse as to destroy the ability to live in and enjoy the home, or reduce the value of the neighboring property. A rural home and a rural family, within reason, are entitled to the same relative protection as others. See *Botsch v. Leigh Land Co.*, 195 Neb. 509, 239 N.W.2d 481 (1976).

A court of equity will not usually enjoin the operation of a lawful business without regard to how serious may

be the grievance caused thereby. In the first instance, at least, it will require the cause of the grievance to be corrected and will enjoin the conduct of the enterprise perpetually after it has been proven that no application of endeavor, science, or skill can effect a remedy where the owners cannot be induced to conduct it properly. *Prauner v. Battle Creek Coop. Creamery*, 173 Neb. 412, 113 N.W.2d 518 (1962); *Botsch, supra*. The trial judge erred in not enjoining the defendant from creating a nuisance at the end of the trial. This is not the same as enjoining the defendant's operations. The plaintiffs, however, were not prejudiced thereby since the trial court required the grievance to be corrected as it would have if it had enjoined the conduct of Franklin Pork.

The plaintiffs contend that the trial court should not have suggested efforts to be pursued by Franklin Pork to abate the nuisance and avoid injunction. As we said before, a court of equity will not usually enjoin an operation permanently without first requiring that the nuisance be abated if at all possible. It stands to reason that the trial judge should inform the defendant as to what portions of its operation constitute a nuisance and to suggest efforts to correct the problem. There was no error in doing so.

The plaintiffs allege that the trial court's impartiality in its adjudicatory function was destroyed by its participatory role as a monitor and its appointment of the other district judge in the same judicial district as a monitor after he had previously disqualified himself.

Neb. Rev. Stat. § 27-605 (Reissue 1979) states: "The judge presiding at the trial may not testify in that trial as a witness. *No objection* need be made in order to preserve the point." (Emphasis supplied.) The plaintiffs and the defendant in this case had no obligation to object to the judge appointing himself as a monitor or to his reports as a monitor when they were received into evidence. Rule 605 in the Federal Rules of Evidence automatically disqualifies the presiding judge, giving him no discretion in the matter. It is suggested that not

only is the judge completely divested of any discretion but it would be improper for the parties to agree among themselves and with the judge that he should continue to preside while being a witness. McCormick on Evidence § 68 nn. 76-77 (2d ed. 1972); Fenner, *Competency and Examination of Witnesses Under Article VI of the Federal Rules of Evidence and the Nebraska Rules of Evidence*, 9 Creighton L. Rev. 559 (1975-76). McCormick also suggests that if no one complains of such a course of action, if the issue is not raised on appeal, then such an agreement would have the practical effect of repealing the rule.

The record indicates that counsel were under the impression that they had to object to the trial judge appointing himself as a monitor. In light of this, they waived all objections under Rule 605 and allowed the monitoring reports to be received into evidence.

The purpose of Rule 605 was to avoid embarrassing the court, the hindrance of justice, scandals in the courts, and to avoid any appearance of impropriety or partiality. The reason that no objection is required is to eliminate the possibility of any hostility arising between the trial judge and counsel. While the other members of the monitoring team were subjected to cross-examination, the trial judge was not. From a practical point of view, it would be nearly impossible for the presiding judge to be cross-examined. The functions of a judge and a witness are incompatible and it is utterly impossible for one to exercise the rights of a witness and to perform the duties of a judge at one and the same time. See *Re Hildreth Estate*, 113 Vt. 26, 28 A.2d 633 (1942).

Nebraska Evidence Rule 605 was adopted and is identical to Federal Rule of Evidence 605. However, 28 U.S.C. § 455 (1977) provides that the presiding judge must disqualify himself if he has been or is likely to be a "material witness" or if he has "personal knowledge of disputed evidentiary facts concerning the proceeding." Further, it provides generally that he "shall disqualify

himself in any proceeding in which his impartiality might reasonably be questioned." Nebraska does not have a similar statute. The latter disqualification is subject to waiver by the parties, upon full disclosure, while the first two mentioned disqualifications cannot be waived. Here the judge was a material witness in the subsequent hearing, monitored the abatement process, and accepted his reports into evidence. There is no indication from the record or from the judge's memorandum or judgment indicating the weight he placed upon his own reports. It can only be expected that one's own observations will form the larger impression and will carry greater weight than other evidence in reaching a decision. The presiding judge made six inspections between April 3, 1979, and November 26, 1979. All of his inspections were between the hours of 9 a.m. and 5 p.m., with most of the inspections occurring around noon. In each of his inspections, the presiding judge stated that there was a strong penetrating odor on the Franklin Pork site but that it decreased to a moderate odor a short distance away. The presiding judge found that the fly population appeared moderate to normal for a farmstead and that the odors were tolerable and seemed normal for a farmstead. There was evidence introduced indicating that the odors were the worst in the evenings and nighttime. Only one of the monitors, Judge Sprague, made any evening inspections. Judge Sprague made only one evening inspection at about 9:30 p.m., and found that the odors were tolerable and normal for the area.

The plaintiffs introduced testimony from Dr. Robert H. Shaw, a climatologist, which indicated that the odor was present 79 percent of the nights. Dr. Shaw's testimony related primarily to air drainage around Franklin Pork and the Cline residence. His testimony was based on data collected from the Cline weather station at their home and the normal wind patterns for that particular area of Nebraska. Dr. Shaw's testimony indicated that on 79 percent of the nights there was a

temperature inversion causing an air drainage from the Franklin Pork property down the draw west of the Cline residence. Shaw indicated that these air drainages could carry the odors from the pork facility.

There was conflicting testimony offered by the defendant's expert witness, George F. Collins. Collins' testimony essentially challenged the accuracy of the findings by Dr. Shaw based on the data collected by the Clines from their thermometers and wind gauges. Collins' testimony did not rule out the possibility that an air drainage had occurred. His testimony only went to the fact that Dr. Shaw's findings were not made with as accurate instruments and data as should have been used. On cross-examination Collins indicated that proper experiments under the circumstances would cost between $60,000 and $80,000.

In light of this testimony, we are unable to rule out the possibility that the presiding judge placed greater weight on his own reports than on any other testimony. There appears to be sufficient evidence in the record upon which one could find that the nuisance had not, in fact, been abated.

Can the parties waive the disqualification of the judge under § 27-605? We are persuaded that for the sake of the orderly administration of justice and meaningful review, they cannot.

If this was a law action, we clearly would have to reverse since, under our standard of review, we must affirm findings of fact made by the court or jury unless clearly wrong. *Gehrke v. General Theatre Corp.*, 207 Neb. 301, 298 N.W.2d 773 (1980). We would not have before us all the facts on which the trier of facts based his decision. We could not determine if the fact finder was wrong unless we were to ignore completely that the impressions of the trial judge, unrevealed to us, may have constituted the primary reason for the decision. However, this is an equity case. We are required to make an independent judgment on the facts. The same difficulty still presents itself; all evidence is not

before us. We have only the brief summaries of the trial judge which were received in evidence without cross-examination. The trial judge's appointment of himself as monitor was error, and the error so permeates this trial as to make it advisable to reverse this matter and return it to the trial court with directions to hold a new hearing to determine if the nuisance has, in fact, been abated.

REVERSED AND REMANDED WITH DIRECTIONS.