MARTHA M. POLL, APPELLEE, V. MARK A. POLL, APPELLANT.

588 N.W. 2d 583

Filed January 29, 1999.   No. S-97-1324.

Robert Wm. Chapin, Jr., for appellant.

Lisa A. Liekhus, of Willet, Liekhus & Carothers, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

This appeal arises from postdissolution modification of visitation and contempt proceedings. The proceedings were brought on by the application to modify visitation filed by Martha M. Poll, the mother, to which Mark A. Poll, the father, responded by seeking an order of contempt.

The father appeals certain orders of the district court for Gage County. On appeal, the father, who contends he is indigent, claims that the trial court denied him procedural due process by refusing to appoint counsel to represent him and erred by granting the mother's application to limit visitation to supervised visitation. For the reasons set forth below, we affirm. In reaching our decision, we conclude, inter alia, that due process does not require the appointment of counsel in this postdissolution modification of visitation case.

## FACTS

According to the pleadings, the marriage of the parties was dissolved on September 7, 1995, and the mother was awarded custody of the parties' minor child, Brandon Scott Poll, born

September 10, 1987, subject to visitation by the father. Visitation proceeded until December 15, 1995.

The mother testified that on December 16, 1995, she was pinned down against her will by the father at her apartment. The father denied the event occurred but was convicted of criminal trespass and false imprisonment, for which he was imprisoned from August 28, 1996, to January 25, 1997.

As to another incident, the mother testified that the father took the child from day care on January 16, 1996, without her permission. The mother eventually retrieved the child from the Sarpy County sheriff's office on January 19.

The mother obtained a protection order against the father for herself and the child on March 18, 1996. The mother denied the father visitation following expiration of the protection order. In June 1997, the mother and child moved to a protective shelter, where they were residing at the time of the trial.

The mother filed an application to modify visitation in the district court for Gage County on February 3, 1997. In the application, the mother sought an end to the father's visitation or, in the alternative, a provision for supervised visitation.

The father denied the majority of the mother's allegations and on April 21, 1997, applied for a contempt citation against the mother for denial of visitation in contravention of the divorce decree.

Trial was held on September 12 and 17 and October 8, 1997. The father proceeded pro se. Thirteen witnesses testified, including the mother and father. The bill of exceptions is 559 pages in length. Numerous exhibits were received pertaining to diaries, the father's criminal convictions, the child's schoolwork, and other documentary evidence.

The mother called witnesses who supported her contentions that, inter alia, she attends church with the child, she and the child have received counseling, the child has indicated that the father is physically aggressive, the false imprisonment occurred as she had related, the child was abducted from day care by the father, and she properly cares for the child.

The father called witnesses who supported his contentions that, inter alia, he properly cares for the child and the mother denied him visitation.

During the course of the trial, the father asked the court to appoint counsel, which the trial court denied. Upon conclusion of the trial, the court took the mother's application to modify and the father's motion for contempt under advisement.

On October 23, 1997, the trial court filed its written order, which is eight pages in length. In it, the trial court, inter alia, grants the mother's application for supervised visitation and denies the father's motion for contempt. The father appeals. Other testimony and facts relevant to our consideration of the father's assignments of error will be set forth in our analysis of the appeal.

## ASSIGNMENTS OF ERROR

As his assignments of error, the father claims that the trial judge erred (1) by not finding the mother in contempt, (2) by not recusing himself, (3) by not appointing counsel for the father, and (4) by restricting the visitation of the father.

## STANDARD OF REVIEW

Child custody determinations, and visitation determinations, are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Betz v. Betz,* 254 Neb. 341, 575 N.W.2d 406 (1998).

## ANALYSIS

*Contempt.*

The father assigns as error the trial court's failure to find the mother in contempt. The father does not argue this assignment of error in his brief. Errors assigned but not argued will not be addressed. *Myers v. Nebraska Equal Opp. Comm.,* 255 Neb. 156, 582 N.W.2d 362 (1998).

*Recusal.*

The father assigns as error the trial judge's refusal to recuse himself. The father argues that the trial judge was not impartial due primarily to the trial judge's familiarity with the criminal proceedings against the father.

In an equity suit, the denial by a trial court of a motion for disqualification of the trial judge is immaterial on appeal, since

the case is tried de novo in the reviewing court. *Deacon v. Deacon*, 207 Neb. 193, 297 N.W.2d 757 (1980). Where a case on appeal is tried de novo, refusal by the trial judge to disqualify himself or herself is immaterial. *Garrett v. Garrett*, 3 Neb. App. 384, 527 N.W.2d 213 (1995). In this case, the decision of the trial judge in refusing to disqualify himself was not an abuse of discretion. See *Deacon, supra.*

### Appointment of Counsel in Proceeding to Modify Visitation.

The father claims that he is indigent and that the trial court erred in failing to appoint counsel to represent him in this case involving the mother's application to modify visitation. The father claims he was denied procedural due process. We do not agree.

In response to the father's claim, the mother asserts that the father received the process he was due and observes parenthetically that the father may not be indigent and, therefore, that counsel need not be appointed.

We assume for the sake of argument that the father is indigent. Accordingly, we proceed to analyze the father's due process claim that he was entitled to the appointment of counsel at the hearing on the mother's application to modify visitation.

The father argues on appeal that the relationship between a parent and a child is constitutionally protected and cannot be affected without procedural due process. The father claims that he was entitled to appointment of counsel in this case by virtue of the due process requirements of the 14th Amendment. The father misperceives the scope and nature of the proceedings herein and the limited consequences of the trial court's ruling modifying visitation.

It is axiomatic that due process does not guarantee an individual any particular form or method of procedure. *Hroch v. City of Omaha*, 226 Neb. 589, 413 N.W.2d 287 (1987). See, U.S. Const. amend. V and XIV; Neb. Const. art. I, § 3. The requirements of due process are satisfied if an individual has reasonable notice and reasonable opportunity to be heard appropriate to the nature of the proceeding and the character of the rights which may be affected by it. *Hroch, supra; Howard v. City of Lincoln*, 243 Neb. 5, 497 N.W.2d 53 (1993).

In a case involving the dissolution of a marriage, given the significant interest at stake, the U.S. Supreme Court has held that due process prohibits a state from denying access to its courts solely because of inability to pay court fees. *Boddie v. Connecticut*, 401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971). Similarly, in *M.L.B. v. S.L.J.*, 519 U.S. 102, 117 S. Ct. 555, 136 L. Ed. 2d 473 (1996), the U.S. Supreme Court held that a Mississippi statute that required a mother to pay in advance for record preparation to perfect her appeal from the termination of her parental rights violated the mother's equal protection and due process rights.

In evaluating the constitutional claims, the Court observed in *M.L.B.* that termination of parental rights decrees are among the most severe forms of state action, that the label "civil" should not entice an appellate court into refusing to evaluate the due process claim regarding termination of parental rights, and that decrees terminating parental rights work a unique kind of deprivation which sets them "apart from mine run civil actions, even from other domestic relations matters such as divorce, paternity, and child custody." 519 U.S. at 127. The *M.L.B.* court continued: "In contrast to matters modifiable at the parties' will or based on changed circumstances, termination adjudications involve the awesome authority of the State 'to destroy permanently all legal recognition of the parental relationship.'" 519 U.S. at 127-28.

In Nebraska jurisprudence, it has been held that the appointment of counsel may be required in either criminal or civil cases where a party may be deprived of his or her physical liberty. *Allen v. Sheriff of Lancaster Cty.*, 245 Neb. 149, 511 N.W.2d 125 (1994). In *Allen*, we concluded in a habeas corpus appeal that an indigent litigant had a right to appointed counsel in a contempt action for failure to pay a debt assigned to him in a dissolution decree, where he was jailed for contempt. In *Allen*, we relied on *Carroll v. Moore*, 228 Neb. 561, 423 N.W.2d 757 (1988), *cert. denied* 488 U.S. 1019, 109 S. Ct. 817, 102 L. Ed. 2d 807 (1989).

In *Carroll*, we concluded that a putative father in a paternity action had a due process right to court-appointed counsel in that case where the county attorney's office assisted the mother in prosecuting her claim. In addition, we concluded that due pro-

cess requires that an indigent defendant have an absolute right to court-appointed counsel in state-initiated paternity proceedings. *Id.* We observed in *Carroll* that paternity cases raise the monumental issue of the creation of parent-child relationships, that a paternity determination is res judicata as to later proceedings, and that upon a finding of paternity, a father is exposed to the potential threat of imprisonment in the event of nonpayment of support. In *Carroll*, we concluded that under the facts of that case, "[t]he concepts of 'fundamental fairness' and 'meaningful opportunity to be heard' which are integral to the notion of due process make the right to counsel mandatory." 228 Neb. at 579, 423 N.W.2d at 767. Thus, under Nebraska law, in either a criminal or a civil action, due process may require appointment of counsel where a significant right is at stake in a case ordinarily brought on by the State or where a deprivation of liberty is threatened.

We have reviewed the literature regarding appointment of counsel in dissolution cases, including cases cited by the parties on appeal. It is the majority rule that a party is not entitled to appointment of counsel in a dissolution action. See, e.g., *Harmon v. Harmon*, 943 P.2d 599 (Okla. 1997) (holding that husband did not have constitutionally protected right to counsel, although case involved property issues and issues concerning custody and visitation with minor child); *Gibbs v. Gibbs*, 941 P.2d 1014 (Okla. Civ. App. 1997) (holding no right to counsel in marital dissolution because civil in nature); *In re Marriage of Smith*, 537 N.W.2d 678 (Iowa 1995) (holding that absence of counsel satisfied due process where pro se litigant did not contest petition for dissolution of marriage); *Kiddie v. Kiddie*, 563 P.2d 139 (Okla. 1977) (holding no right under 6th or 14th Amendment to counsel in divorce action, evidently because civil in nature); *South v. South*, No. 02A01-9703-CV-00054, 1997 WL 426975 (Tenn. App. July 30, 1997) (holding that there is no right to appointment of counsel in dissolution action, because it is civil case); *Yeh v. Kisaka*, No. 3111-96-4, 1997 WL 310061 (Va. App. June 10, 1997) (holding that right to counsel does not extend to civil domestic cases of divorce and child custody, relying on *M.L.B. v. S.L.J.*, 519 U.S. 102, 117 S. Ct. 555, 136 L. Ed. 2d 473 (1996)); *Calhoun v. Calhoun*, No.

CA95-11-024, 1996 WL 307128 (Ohio App. June 10, 1996) (holding no right to counsel in civil case between individual litigants); *Roth v. Roth*, 65 Ohio App. 3d 768, 585 N.E.2d 482 (1989) (holding no right of counsel in dissolution cases involving custody, because civil case between individual litigants); *Haller v Haller*, 168 Mich. App. 198, 423 N.W.2d 617 (1988) (holding no due process right to counsel in dissolution involving custody, because custody decree is subject to modification). Compare *Flores v. Flores*, 598 P.2d 893 (Alaska 1979) (holding that where father was represented by Alaska legal services corporation, mother had due process right to court-appointed counsel). For the sake of completeness, we note that we are aware that the appointment of counsel in a dissolution action may be discretionary with the court where custody is at issue and the statutes provide for such appointment. See N.Y. Judiciary-Court Acts-Family Court § 262(a)(v) (McKinney 1999). Nebraska has no such statutory provision.

With respect to visitation issues following a dissolution such as are raised in the case before us, the clear majority of courts hold that there is no right to court-appointed counsel. See, e.g., *Meyer v. Meyer*, 414 A.2d 236 (Me. 1980) (holding no due process right to counsel in proceeding to terminate father's visitation rights); *Jocius v. Jocius*, 218 Wis. 2d 103, 580 N.W.2d 708 (Wis. App. 1998) (holding that there is no authority for appointment of counsel in postjudgment phase of dissolution proceeding involving physical placement of children). In *Meyer, supra*, the Maine Supreme Court noted that the proceeding to extinguish the father's visitation rights following divorce was not brought about by the state but was primarily a dispute between parents. Quoting *Danforth v. State Department of Health & Welfare*, 303 A.2d 794 (Me. 1973), the *Meyer* court noted that the analysis of whether to appoint counsel differs from proceedings such as neglect proceedings where " 'the full panoply of the traditional weapons of the state are marshalled against the defendant parents.' " 414 A.2d at 238.

In the instant case, the father claims that he is entitled to appointed counsel because a fundamental liberty interest is affected by the mother's application to modify visitation. The

father misperceives the scope and impact of the mother's application.

The instant proceeding is one brought on by an individual involving a dispute between parents. The "weapons" of the state have not been marshalled against the father. The subject matter of the proceeding is the adjustment of visitation, not the initiation or termination of parental rights. Indeed, the issues of custody and visitation remain subject to modification following dissolution by statute, see Neb. Rev. Stat. § 42-351 (Cum. Supp. 1996), and upon a proper showing, visitation more favorable to the father could be ordered. The father has not, as a result of the modification of the postdissolution visitation, suffered the severe deprivation that triggers the appointment of counsel in civil and criminal cases. The father's legal interest in his child is unaffected. The father received reasonable notice and an opportunity to be heard commensurate with the rights affected by the proceedings. We conclude that the father did not have a due process right to appointment of counsel in these proceedings involving the mother's application to modify visitation. The trial court did not err in not appointing counsel for the father.

*Order Restricting Visitation.*

In its order of October 23, 1997, the trial court suspended the father's visitation subject to a subsequent application by the father showing the existence of an arrangement for structured, monitored, supervised visitation. On appeal, the father argues that the order of supervised visitation is not supported by sufficient evidence and that his visitation should be unfettered. We do not agree.

As noted above in this opinion, although our standard of review is de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Betz v. Betz*, 254 Neb. 341, 575 N.W.2d 406 (1998). In reviewing the decision of the trial court regarding visitation, we find no abuse of discretion.

There was ample evidence in the record that the child suffered from posttraumatic stress disorder and that the abduction incident when he was taken from day care was one of the trig-

gering factors. We understand the testimony to mean that the child suffers separation anxiety associated with physical placement with the father. The child told Ruth Ann Placek, a licensed mental health therapist and his counselor, that he fears the father. The child expressed these fears to Placek and has flashbacks of abusive events. Placek testified that the child's prognosis was guarded, that he should not be exposed to "triggering events," and that supervised visitation was indicated. The record shows that the mother and the child lived at a protective shelter at the time of trial in an effort to avoid the father.

With respect to the incident of December 16, 1995, there is conflicting testimony. However, it is undisputed that the father was convicted of second degree false imprisonment and trespass and served a sentence from August 28, 1996, to January 25, 1997, as a result thereof.

The mother has had custody of the child since the decree of dissolution, and they have a good relationship. The child expresses certain fears about being with the father. Although limits on visitation are an extreme measure, they may be warranted where they are in the child's best interests. *Koch v. Koch*, 219 Neb. 195, 361 N.W.2d 548 (1985). Based on this record, we find that the child's best interests were served by an order of supervised visitation. The trial court did not err in ordering supervised visitation.

## CONCLUSION

The father's assignments of error are without merit. The father did not argue the assigned error that the trial court failed to grant his motion for contempt, and we do not consider it. The trial judge did not err in refusing to recuse himself. The trial court did not err in refusing to appoint counsel for the father in this case involving the application of the mother to modify visitation. The trial court's order of supervised visitation was proper. We, therefore, affirm.

AFFIRMED.