VILLAGE OF EXETER, APPELLEE AND CROSS-APPELLANT, V.
MICHAEL KAHLER, APPELLEE AND CROSS-APPELLEE, AND MARIAN
KAHLER, APPELLANT AND CROSS-APPELLEE.

606 N.W.2d 862

Filed March 7, 2000.   No. A-98-1084.

Steven B. Fillman, of Fillman Law Offices, for appellant.

Charles W. Campbell, of Angle, Murphy, Valentino &
Campbell, P.C., for appellee Village of Exeter.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

PER CURIAM.

## I. INTRODUCTION

Marian Kahler appeals from a ruling of the district court
ordering specific performance of an agreement to sell real
estate. On appeal, Kahler asserts that the trial court erred in
denying her motion for recusal and in finding the agreement to
be valid and enforceable, and alleges, inter alia, that the agree-
ment was procured by duress. For the reasons stated herein, we
reverse, and remand for further proceedings.

(1)

## II. BACKGROUND

On May 20, 1998, Charles Campbell, as attorney for the village of Exeter (Village), filed a petition in the district court seeking specific performance of an agreement for Kahler and her husband to sell a parcel of real estate to the Village. The petition alleged that an agreement was entered into on March 3 in open court, whereby the Village agreed to pay the Kahlers $3,000, release a lien against the property, and "dismiss actions for civil contempt and criminal contempt which were pending against" the Kahlers and that in exchange, the Kahlers would sell the property to the Village. On April 16, Kahler gave notice to the Village that she would not convey the property as previously agreed.

According to the testimony adduced at trial, the Village brought an action against the Kahlers in 1996, alleging that the property in question was a nuisance. Apparently, the Kahlers failed to comply with an order entered by the court as a result of the nuisance proceeding. The Village then filed a criminal contempt action against the Kahlers. On February 5, 1998, Campbell was appointed as special prosecutor for purposes of pursuing the criminal contempt action against the Kahlers. Campbell filed accusations of criminal contempt against the Kahlers also on February 5.

On February 2, 1998, Campbell sent a letter to an attorney who was representing both of the Kahlers. In the letter, Campbell enclosed a copy of the criminal contempt accusation against the Kahlers. Campbell also reminded the attorney that "the Village has offered to purchase the real estate from the Kahlers for the sum of $3,000.00." Further, Campbell noted that "[i]n addition to this offer, the Village has also agreed to dismiss [a] lien [against the property and] is agreeable to dismissing the criminal and civil contempt proceedings which are pending."

On July 8, 1998, Kahler moved for a continuance of the specific performance trial. Kahler alleged that the action had been pending for less than 60 days and that she needed more time to complete discovery. The trial judge, Orville L. Coady, ruled on the motion by returning a typed note to Kahler's counsel. In the note, Judge Coady stated, "This matter has been pending for years. Your sudden appearance causes me to suspect that your

client's efforts are just another way [to] put off justice for her neighbors. There were so many ways for this matter not to have come to this." The case proceeded to trial on September 15.

At the trial, Kahler moved for the trial judge, Judge Coady, to recuse himself from the case. Kahler's counsel questioned Judge Coady about the note mentioned above, as well as other alleged statements made by Judge Coady about Kahler. Judge Coady stated on the record that he was not going to recuse himself and that he could divorce himself from the prior actions involving Kahler in his courtroom.

Kahler testified at trial that she took Campbell's February 2, 1998, letter as a threat. She testified that she believed if she did not sell the land to the Village, she had to " 'go to court for criminal contempt' " and that if found guilty, that "we would be going to jail." She testified that Campbell's position, as related to her, was that "he could force [the Kahlers] to sell the land or keep the criminal contempt charges against [them]." Kahler testified that she was afraid of her husband's having to go to jail and of losing her children if found guilty of the contempt charge. Kahler testified that she agreed to sell the land because she felt she had no other choice. The attorney who represented Kahler at the contempt hearing testified at trial that the main factor that Kahler considered in deciding whether to agree to sell the land was that "[s]he was concerned about [her husband's] going to jail."

At the contempt hearing, on March 3, 1998, the parties had advised Judge Coady that they had reached an agreement to sell the land. The terms of the agreement were stated in open court. The Village acknowledged that it agreed with the terms of the agreement. Judge Coady further questioned the Kahlers as to whether they understood and accepted the terms of the agreement. Kahler stated that the agreement was "what they've [her attorneys] told me." Judge Coady stated, "Well, you have to — it has to be your agreement, you can't say it's your lawyers." In response, Kahler stated, "We have no other choice," and agreed that it was her agreement.

On September 25, 1998, Judge Coady rendered a ruling. In the ruling, he concluded that the Village "ha[d] proven a valid and legally enforceable contract." He concluded that Kahler

"considered her position, was aware of her options and then made a voluntary and intelligent decision to sell her real estate to the Village." Accordingly, Judge Coady ordered the Kahlers to specifically perform the agreement and sign a deed transferring the property to the Village. Finally, Judge Coady noted that "[t]he court presumes that [the Kahlers] will appeal or refuse to abide by this order" and set a hearing to appoint a receiver. From this ruling, Kahler has filed a timely appeal. We note that although Kahler and her husband were both defendants at trial, Kahler is the only one to file an appeal, and we are concerned here solely with Kahler and her allegations on appeal.

### III. ASSIGNMENTS OF ERROR

On appeal, Kahler has assigned four errors. Our discussion requires us to consider only one of these. Kahler asserts that Judge Coady erred in refusing to recuse himself from the case. Because our discussion of this assigned error disposes of the appeal, we specifically make no comment concerning Kahler's assigned errors challenging Judge Coady's ruling on the merits of this case.

The Village has filed a cross-appeal, assigning five errors concerning evidentiary rulings made by Judge Coady. These evidentiary rulings concern sustaining Kahler's objection to various exhibits and sustaining Kahler's objection to various cross-examination questions.

### IV. ANALYSIS

#### 1. STANDARD OF REVIEW

An action for specific performance sounds in equity. *Marten v. Staab*, 249 Neb. 299, 543 N.W.2d 436 (1996); *Winberg v. Cimfel*, 248 Neb. 71, 532 N.W.2d 35 (1995); *Fritsch v. Hilton Land & Cattle Co.*, 245 Neb. 469, 513 N.W.2d 534 (1994). In appeals from equity actions, an appellate court tries factual questions de novo on the record. *Marten v. Staab, supra*; *Winberg v. Cimfel, supra*; *Fritsch v. Hilton Land & Cattle Co., supra*. As to both questions of fact and questions of law, an appellate court is obligated to reach a conclusion independent of that reached by the trial court. *Marten v. Staab, supra.*

## 2. MOTION TO RECUSE

Kahler asserts that Judge Coady erred by refusing to recuse himself from this case. Kahler argues that Judge Coady had personal knowledge of disputed facts, making him a potential witness, and that his comments in the note sent to Kahler's counsel regarding the motion for continuance demonstrated that Judge Coady was biased against her.

■ The Nebraska Supreme Court has recently noted that in an equity suit, a trial court's denial of a motion for disqualification of the trial judge can be immaterial on appeal, because the case is tried de novo in the reviewing court. *Poll v. Poll*, 256 Neb. 46, 588 N.W.2d 583 (1999); *Deacon v. Deacon*, 207 Neb. 193, 297 N.W.2d 757 (1980). See *Garrett v. Garrett*, 3 Neb. App. 384, 527 N.W.2d 213 (1995). In the present case, we conclude that contrary to the situations presented in those Supreme Court cases, the issue is not immaterial.

We first note that in *Poll v. Poll, supra*; *Deacon v. Deacon, supra*; and *Garrett v. Garrett, supra*, the Supreme Court, in each instance, held that the appellant's allegation that the trial court erred in denying a motion for recusal was without merit for additional reasons, beyond the fact that the case was being reviewed de novo. For example, in *Poll v. Poll, supra*, and *Deacon v. Deacon, supra*, the Supreme Court noted that the review was de novo, but further concluded that the decision of the trial judge to deny the motion was not an abuse of discretion. Similarly, in *Garrett v. Garrett, supra*, the appellant failed to properly assign and argue the issue. We have not been cited to any case in Nebraska where the sole reason for affirming a court's denial of a recusal motion was the fact that the review was de novo and the issue, therefore, immaterial.

The primary reason that we decline to extend the holding of *Poll v. Poll, supra*; *Deacon v. Deacon, supra*; and *Garrett v. Garrett, supra*, however, is that in none of those cases was the trial judge in possession of independent knowledge of material facts, such that he was potentially a material witness in the case being brought before him for adjudication. In the present case, Judge Coady was the presiding judge at the proceedings in which Kahler assented to the agreement to sell her land to the Village in exchange for having pending criminal charges

dropped. Judge Coady questioned Kahler during those proceedings as to whether she understood and accepted the terms of the agreement. As such, Judge Coady had independent personal knowledge material to the determination of the primary issue presented in the current proceedings, namely, whether Kahler voluntarily assented to the agreement.

It is clear that Judge Coady was prohibited from testifying in the present case as a witness at the same time he presided over the case. Neb. Rev. Stat. § 27-605 (Reissue 1995) specifically prohibits a judge from acting as both judge and witness in the same proceedings. In *Cline v. Franklin Pork, Inc.*, 210 Neb. 238, 313 N.W.2d 667 (1981), the Supreme Court noted that the federal statutes go further than the Nebraska statutes and prohibit a judge from presiding over a case where a judge has been or is likely to be a material witness or has personal knowledge of disputed evidentiary facts concerning the case. The court noted that Nebraska does not have a similar statute. Nonetheless, we believe that the circumstances of the present case dictate that Judge Coady should have disqualified himself, on the basis of existing Nebraska law.

While Nebraska does not have a statute similar to the federal statute discussed in *Cline v. Franklin Pork, Inc., supra*, Nebraska does have the Nebraska Code of Judicial Conduct, which includes prohibitions substantially similar to the federal statute. Specifically, Canon 3 of the Code of Judicial Conduct mandates that a judge shall perform the duties of the judicial office impartially and diligently. See *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994). See, also, *Jim's, Inc. v. Willman*, 247 Neb. 430, 527 N.W.2d 626 (1995) (Caporale, J., concurring). Canon 3E provides that a judge shall not participate in any proceeding in which the judge's impartiality reasonably might be questioned, including but not limited to instances where the judge has personal knowledge of disputed evidentiary facts concerning the proceeding. See *State v. Vidales*, 6 Neb. App. 163, 571 N.W.2d 117 (1997). As noted above, in the present case, Judge Coady did have personal knowledge of disputed evidentiary facts concerning the voluntariness of Kahler's assent to the agreement which was the subject of the present proceeding.

Judge Coady's continuing to preside over the present case and reach factual conclusions, while at the same time possessing personal knowledge of the material facts at issue in the case, was in contravention of the spirit and broad meaning of § 27-605. Section 27-605 specifically provides that a judge presiding at trial is not competent to testify in that trial as a witness. Additionally, § 27-605 provides that no objection is necessary to preserve the issue. Although it is true that Judge Coady was not sworn to testify and did not formally take the stand as a witness on the subject of Kahler's assent to the agreement at issue, the record nonetheless establishes that he did have personal knowledge relevant to determining the voluntariness of her assent. In *State v. Barker*, 227 Neb. 842, 420 N.W.2d 695 (1988), the Supreme Court noted that a judge may assume the role of a witness during a trial even though he is neither called to testify nor voluntarily takes the witness stand. The court concluded that such behavior is at variance with the policy expressed in § 27-605 and should be treated analogously to direct violation of the rule. *State v. Barker, supra*. See, also, *State v. Rodriguez*, 244 Neb. 707, 509 N.W.2d 1 (1993).

In the present case, although we are required to conduct a de novo review, we are not privy to all of the evidence that was actually considered by the trial court. Judge Coady presided over the contempt hearing where the parties entered into the agreement which is the subject of the present case. Judge Coady personally observed the circumstances under which the agreement was reached and questioned Kahler personally as to the voluntariness of her assent to the agreement.

In the present case, one of the material issues Judge Coady was called upon to determine was whether Kahler's assent to the agreement was voluntary. On that material issue, Judge Coady possessed personal knowledge. We must examine the particular circumstances of this case to determine whether Kahler was prejudiced by Judge Coady's continuing to preside over the present case. See *State v. Barker, supra*. Under the circumstances presented to us, we are unable to rule out the possibility that Judge Coady placed greater weight on his own observations and opinions than on any other evidence presented. See *Cline v. Franklin Pork, Inc.*, 210 Neb. 238, 313 N.W.2d 667 (1981).

Finally, we note that the record in the present case reveals an appearance of partiality on Judge Coady's part. In addition to the fact that Judge Coady possessed personal knowledge of material facts, several comments by Judge Coady that are in the record of this case suggest at least an appearance of partiality. For example, in ruling on a pretrial motion to suppress, Judge Coady suggested that Kahler's hiring of a new attorney shortly prior to trial was "just another way [to] put off justice for her neighbors." Not only does this statement reflect that Judge Coady questions Kahler's motives for hiring an attorney, but the statement also suggests that Judge Coady may have reached a determination prior to trial as to the eventual outcome that would bring "justice" to Kahler's neighbors.

Additionally, after ruling on the merits of the specific performance action, Judge Coady noted in an order that "[t]he court presumes that [Kahler] will appeal *or refuse to abide by this order.*" (Emphasis supplied.) This statement continues a pattern of comments by Judge Coady in this case suggesting that Judge Coady's personal knowledge and opinions about Kahler may have affected his ruling in this case, in that he has noted on the record that he expects Kahler to "refuse to abide by" his order. These comments add to the impact Judge Coady's possession of personal knowledge about material facts had on the way in which this case proceeded and the decisions that were reached. The record presented to us is colored with evidence that Judge Coady's presiding over the present action was inappropriate.

We conclude that the issue of whether Judge Coady should have granted Kahler's motion for recusal is not immaterial in the present case. We further conclude that Judge Coady abused his discretion in denying her motion where he clearly possessed personal knowledge of material facts critical to the decision to be reached in the present case.

### 3. CROSS-APPEAL

On cross-appeal, the Village has raised numerous assigned errors alleging that Judge Coady erred in various evidentiary rulings. Because we have concluded that Judge Coady should have recused himself from presiding over the present action, we must reverse, and remand the case for further proceedings. As a

result, we need not address the merits of the cross-appeal at this time. Without specifically addressing each of the assigned errors, we note that even if we were to consider the evidence excluded by Judge Coady, our result would be the same. The evidence excluded does not change the fact that Judge Coady should have recused himself from the proceedings. As such, the assigned errors on cross-appeal are without merit.

### V. CONCLUSION

Finding that Judge Coady abused his discretion in denying Kahler's motion for recusal, we reverse, and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

CARLSON, Judge, concurs in the result.